**RICHTER PLUMBING AND HEATING, INC., a Colorado corporation, Plaintiff-Appellee,**

v.

**Donald R. RADEMACHER, Cheryl T. Rademacher; and Intrawest Mortgage Company, Defendants-Appellants.**

No. 85CA1037.

Colorado Court of Appeals, Div. I.

July 10, 1986.

Rehearing Denied Aug. 14, 1986.

Certiorari Denied (Richter) Dec. 22, 1986.

Arthur P. Roy, Greeley, for plaintiff-appellee.

Harlan C. Steintjes, P.C., Harlan C. Steintjes, Greeley, for defendants-appellants.

STERNBERG, Judge.

The defendants Donald R. Rademacher, Cheryl T. Rademacher, and Intrawest Mortgage Company (the Rademachers) appeal from an adverse judgment establishing a mechanic's lien in favor of plaintiff, Richter Plumbing & Heating, Inc. (Richter), and granting Richter leave to foreclose that lien. We affirm in part and reverse in part.

In February 1983, the Rademachers began negotiations for the purchase of a building lot from persons not parties to this suit. On February 24, they agreed to purchase the lot, with closing to be held on April 15. On or about April 4, the Rademachers entered into a contract for construction of a single-family residence upon the subject lot. The contractor was Colorado Sun Homes, Inc., (Sun Homes) represented at all times pertinent hereto by its president, Ray Nelson. To facilitate financing of the construction, it was agreed that Sun Homes would purchase the lot from the third-party sellers at the price the Rademachers had agreed to pay, and that Sun Homes would reconvey the lot, with

the completed house, to the Rademachers. Sun Homes purchased the lot and the Rademachers made a down payment on the contract to Sun Homes.

Construction began in May. Installation of a solar domestic hot water system was subcontracted to plaintiff Richter. The heating design of the structure was to be supplemented by a solarium: Passively heated air would be sucked from the solarium and circulated throughout the house by a fan and duct system. Richter's subcontract did not include labor or materials associated with the solarium because Nelson, for whom Richter had previously worked, preferred to design such features himself. Richter was to install its portion of the solarium-related system to Nelson's specifications and receive payment therefor independently of the subcontract it had bid.

The Rademachers occupied the house at the end of October, 1983, and the closing with Sun Homes occurred on November 1. At the time of occupancy by the Rademachers, the hot water and solarium systems were not completed. Richter completed them and they were operational by November 11. However, the Rademachers subsequently discovered that the circulating fans were excessively noisy. On December 13 and 14, Richter returned to the house, determined that the fans were noisy because they had been mounted to sheet metal ventilation ducts, and remounted them to concrete.

Sun Homes became bankrupt and Richter was not paid in full for its work. It served notice of intent to file a mechanic's lien on March 16, 1984, and recorded a mechanic's lien statement ten days later. After a bench trial, the court found that the date of completion of the house was December 14 and concluded that the lien was timely perfected. Further, finding that the Rademachers were not bona fide purchasers within the meaning of § 38–22–125, C.R.S. (1982 Repl.Vol. 16A), it concluded that the amount of the lien comprehended all work done by Richter for which it had not received payment.

I.

The Rademachers first contend that the trial court erred in concluding that the limitations of § 38–22–125 do not apply to Richter. They argue that the undisputed facts of this case prove all elements of bona fide purchaser status under the statute, and that Richter's lien must fail at least to the extent that it comprehends labor and materials furnished before November 1, the date of conveyance, because it was not filed as provided therein. We agree.

Section 38–22–125 provides, in pertinent part:

"No lien, excepting those claimed by laborers or mechanics as defined in section 38–22–108(1)(a), filed for record more than two months after completion of the building, improvement, or structure shall encumber the interest of any bona fide purchaser for value of real property, the principal improvement upon which is a single- or double-family dwelling, unless said purchaser at the time of conveyance has actual knowledge that the amounts due and secured by such lien have not been paid, or unless such lien statement has been recorded prior to conveyance, or unless a notice as provided in section 38–22–109(10) has been filed within one month subsequent to completion or prior to conveyance, whichever is later ... For the purposes of this section, the dwelling shall be deemed complete upon conveyance and occupancy if not completed before...."

This section evidences a legislative decision to limit the rights otherwise granted to mechanic's lienors. A mechanic's lien secures *in rem* recovery against property, and generally, a party claiming for labor and materials must perfect its lien by filing within four months "after the day on which the last labor was performed or the last material furnished by such lien claimant." Section 38–22–109(5), C.R.S. (1982 Repl.Vol. 16A). *But see* § 38–22–109(10), C.R.S. (1982 Repl.Vol. 16A) (allowing extension of filing period). Section 38–22–125, however, protects the property interest of bona fide

purchasers by providing narrower perfection requirements.

In "deemed completed" situations such as that at issue here, a claimant may perfect a lien as against the interest of a bona fide purchaser only: (1) if a lien statement is filed either before or within two months after the date of conveyance and occupancy; (2) if a § 38–22–109(10) notice is filed within one month after that time; or (3) it can be shown that the bona fide purchaser had, at the time of conveyance, actual knowledge of nonpayment.

Richter contends that the Rademachers are not entitled to bona fide purchaser status within the meaning of § 38–22–125 because the General Assembly did not intend to include therein those who have initiated a home building project, and who, as found by the trial court, "visited the construction site on almost a daily basis to inspect the progress of the work and ... paid third-parties, during the construction period, for labor and materials provided to the project which were not included in, or which were above and beyond, the contract" with Sun Homes. This argument is unpersuasive.

Inspection of and involvement in the construction process is a common phenomenon among prospective homeowners. To adopt Richter's argument would be to require all bona fide purchasers to be strangers to the construction process, thereby denying the protection of that status to a segment of the home buying public. We conclude that by including the actual knowledge requirement in the statute the General Assembly intended to preclude this result.

Richter nevertheless contends that the Rademachers stand in a different position because of the peculiarities of the arrangement by which the building lot, originally under contract to them, was transferred to Sun Homes. It argues that Sun Homes held at best "naked legal title," that the Rademachers retained the real ownership interest, and that this interest was lienable pursuant to § 38–22–103(3), C.R.S. (1982 Repl.Vol. 16A) (mechanic's lien shall extend to any greater interest in subject property acquired by owner thereof subsequent to making of contract or commencement of work, including any assignable, transferable, or conveyable interest). This argument, however, does not address the point of § 38–22–125.

■ All bona fide purchasers possess, prior to closing, an equitable interest in the property purchased which may be subject to mechanic's liens. *See Dwyer v. District Court,* 188 Colo. 41, 532 P.2d 725 (1975) (recognizing doctrine of equitable conversion); *Sontag v. Abbott,* 140 Colo. 351, 344 P.2d 961 (1959) (equitable interest of purchase optionee which ripened to ownership is subject to mechanic's lien); *Banker's Building & Loan Ass'n v. Fleming Brothers Lumber Co.,* 83 Colo. 335, 264 P. 1087 (1928) (equitable interest conferred by certificate of purchase at foreclosure is subject to mechanic's lien). The question here is not whether this interest is lienable, but what must be done in order to perfect the lien.

■ Although the mechanic's lien statute is to be liberally construed in favor of lien claimants, *see Tighe v. Kenyon,* 681 P.2d 547 (Colo.App.1984), it is to be strictly construed in determining whether the right to a lien exists. *Fleming v. Prudential Insurance Co.,* 19 Colo.App. 126, 73 P. 752 (1903). And, those who wish to claim the benefits of the lien must prove compliance with all statutory requirements necessary to establishing entitlement thereto. *See Kalamath Investment Co. v. Asphalt Paving Co.,* 153 Colo. 109, 384 P.2d 938 (1963); *C & W Electric, Inc. v. Casa Dorado Corp.,* 34 Colo.App. 117, 523 P.2d 137 (1974).

■ Both parties here are relatively innocent. However, it is undisputed that: The Rademachers paid value for the property and had no actual knowledge of nonpayment of Richter; the improvement was a single-family dwelling which was occupied by the November 1 closing; as of May 3, 1983, Sun Homes was the owner of record of the building lot; Richter knew that the Rademachers were to purchase the improved property; and the Rademachers

were not acting in bad faith. Further, in spite of the fact that Richter knew that Sun Homes was in financial difficulty, there is nothing in the record to indicate that it took any action to inform the Rademachers of nonpayment or to act timely to protect its lien rights.

After considering the apportionment of burdens and benefits reflected by § 38–22–125 in the context of the general mechanic's lien statute, we conclude, as a matter of policy, that the lien claimant, a business entity experienced in the vagaries of the construction industry, was in a better position than the more naive purchasers to protect itself under the statute. We note that this is even more true under the facts of this case than in the scenarios advanced by Richter wherein a buyer purchases a used home upon which improvements have recently been made or contracts to buy a completed new home upon which labor is not currently being performed or to which material is not currently being furnished. In these situations, it is likely that the identity of the purchaser would be unknown to the prospective lienor.

We conclude that the Rademachers are bona fide purchasers within the meaning of § 38–22–125 and that Richter failed to perfect its right to a mechanic's lien securing payment for work performed prior to November 1, 1983.

## II.

The Rademachers next contend that the work performed by Richter between November 1 and December 14 was repair work unrelated to completion of the residence and that the trial court erred in concluding that December 14 was the completion date for purposes of initiating the four month filing period granted by § 38–22–109(5), C.R.S. (1982 Repl.Vol. 16A). We disagree.

Section 38–22–125 provides that lien rights pertaining to work performed after conveyance and occupancy are subject to the filing requirements set forth in § 38–22–109. A lien claimant may not extend the filing period by doing work related to a "trivial imperfection in or omission from" work or construction performed on a project deemed completed. Section 38–22–109(7), C.R.S. (1982 Repl.Vol. 16A); *Kehn v. Spring Creek Village I*, 38 Colo.App. 550, 563 P.2d 969 (1977). However, all repairs and "shakedown" work following the construction of a house need not precede "completion." *See Kaibab Lumber Co. v. Osburne*, 171 Colo. 49, 464 P.2d 294 (1970). "Determination of completion date is within the province of the trier of fact and will not be overturned on appeal where the evidence supports its finding." *American Factors Associates, Ltd. v. Triangle Heating & Sheet Metal Co.*, 31 Colo.App. 240, 503 P.2d 163 (1972), *citing Kaibab Lumber Co. v. Osburne, supra.*

Here, Richter was not responsible for the improper placement of the circulation fans. It is conceded that the imperfection in the installation of the fans was not trivial and that their remounting was performed at the Rademachers' insistence. The record evidences a continuing course of shakedown work lasting well into February 1984, and involving Richter. There is sufficient evidence to support the trial court's finding that Richter's work was not completed until December 14. Because its lien was filed within four months of that date, we hold that Richter is entitled to a mechanic's lien for work performed after November 1.

Accordingly, the judgment is reversed as to the entry of a mechanic's lien for work performed and materials supplied before November 1, 1983, and is affirmed as to the entitlement of a mechanic's lien for work performed and material supplied after November 1, and the cause is remanded for entry of a judgment confirming the entitlement of Richter to a mechanic's lien in such amount.

PIERCE and METZGER, JJ., concur.