MONTEZUMA PLUMBING & HEAT-
ING, INC., a Colorado corporation,
Plaintiff-Appellant,

v.

The HOUSING AUTHORITY OF
MONTEZUMA COUNTY,
Defendant-Appellee,

MOUNTAIN GRAVEL & CONSTRUC-
TION COMPANY, INC.,
Plaintiff-Appellant,

v.

The HOUSING AUTHORITY OF MON-
TEZUMA COUNTY, Balboa Insurance
Company, Defendants-Appellees,

Colvet, Inc., Defendant,

B & D Electric, Inc., Plaintiff,

Ken WEGHER and Durango Ornamental
Iron, Intervenors-Appellants,

v.

BALBOA INSURANCE COMPANY, The
Housing Authority of Montezuma
County, Defendants-Appellees,

Roger Long, Russell E. Hindmarsh, Public
Trustee, Colvet, Inc., Montezuma Plumb-
ing & Heating, Inc., Defendants.

No. 81CA0798.

Colorado Court of Appeals,
Div. III.

May 6, 1982.

Rehearings Denied June 3, 1982.

Certiorari Denied Sept. 27, 1982.

Bob D. Slough, Cortez, for plaintiff-appellant Montezuma Plumbing & Heating, Inc.

Jon R. Ker, Durango, for intervenors-appellants Ken Wegher and Durango Ornamental Iron.

Robert R. Wilson, Cortez, for plaintiff-appellant Mountain Gravel & Const. Co., Inc.

Tilly & Graves, P. C., David D. Schlachter, L. Jay Labe, Denver, for defendants-appellees Balboa Ins. Co. and The Housing Authority of Montezuma County.

TURSI, Judge.

Appellants seek to set aside summary judgments dismissing their respective claims. We affirm in part and reverse in part.

In actions consolidated for trial, appellants, Montezuma Plumbing & Heating, Ken Wegher, Durango Ornamental Iron, and Mountain Gravel & Construction Company, are unpaid suppliers of labor and materials for a housing project of which the Housing Authority was the owner and Colvet, Inc., the principal contractor. Pursuant to the contract between Colvet and the Housing Authority and the statutory requirements of the public works statutes, §§ 38–26–105 and 38–26–106, C.R.S.1973 (1981 Cum.Supp.), Colvet obtained a performance bond and a labor and material bond from Balboa.

The project in issue was commenced in Spring 1979. It was substantially completed on November 7, 1979, and deemed complete and accepted by the Housing Authority on November 20, 1979. Following published notice, final settlement was made on December 20, 1979.

## MONTEZUMA PLUMBING & HEATING

Montezuma Plumbing & Heating argues that, although it has no remedy under the public works statutes, §§ 38–26–105 through 38–26–107, C.R.S.1973 (1981 Cum. Supp.), for failure to file timely claims, it has common law rights under both bonds as a third-party beneficiary, and has rights to the funds retained by the Housing Authority under a quantum meruit theory.

Montezuma Plumbing & Heating filed its initial complaint on April 4, 1980, seeking to foreclose a mechanic's lien filed against the Housing Authority's property. On March 5, 1981, it asserted, as counterclaims and cross-claims against Colvet, Balboa, and the

Housing Authority, a claim on the labor and material bond and the retainage.

Montezuma Plumbing & Heating does not appeal the dismissal of the mechanic's lien claim.

■ We agree with Montezuma Plumbing & Heating that failure to meet the statutory requirements of the public works statutes does not deprive it of its common law claims against Colvet and Balboa. *Flaugh v. Empire Clay Products, Inc.,* 157 Colo. 409, 402 P.2d 932 (1965); *Continental Casualty Co. v. Rio Grande Fuel Co.,* 108 Colo. 472, 119 P.2d 618 (1941).

■ Montezuma Plumbing & Heating claims that its rights as a third-party beneficiary arise out of the contract between the Housing Authority and Colvet. That contract required Colvet to provide and pay for all labor and materials and to furnish a performance bond and a labor and material bond. It claims relief under both bonds—the performance bond because obstensibly Colvet did not fully perform until the subcontractors were paid, and the labor and material bond because they were intended beneficiaries of the bond. The latter proposition concerning the labor and material bond is correct.

■ Balboa and the Housing Authority claim that privity of contract is required between the labor and materials claimant and the owner in order to prevail on a third-party beneficiary contract. We do not agree.

■ "Colorado follows the rule that one may enforce a contractual obligation made for his benefit although he was not a party to the agreement," and the promise to be enforced is apparent from express provisions of the agreement. *Cox v. Fremont County Public Building Authority,* 415 F.2d 882 (10th Cir. 1969); *Borwick v. Bober,* 34 Colo.App. 423, 529 P.2d 1351 (1974). *See Fourth & Main Co. v. Joslin Dry Goods Co.,* Colo.App., 648 P.2d 178 (1982). As to the labor and material bond, its express provisions and § 38–26–105, which requires that it be furnished, indicate that all persons supplying the contractor or his subcontractors with labor or materials are intended beneficiaries of the contract.

■ However, no claim arises under the performance bond which contains the following language:

"No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein [Housing Authority]...."

*Cf. Corn Construction Co. v. Aetna Casualty Co.,* 295 F.2d 685 (10th Cir. 1961). (Labor and materials claimant could sue on *performance* bond where contract contained express provisions enjoining contractor to pay labor and materials suppliers).

Balboa contends that the one-year limitation on actions contained in the bond is superseded by the six-month limitation found in § 38–26–105 and applicable to § 38–26–106 pursuant to *General Electric Co. v. Webco Construction Co.,* 164 Colo. 232, 433 P.2d 760 (1967). We do not agree.

In *General Electric,* a one-year limitation was contained in the bond, but the statutory six-month limitation was applied presumably because of a "provision that 'any law controlling' should be deemed to amend the one year provision if such law required a shorter period of time within which the action must be brought."

Here, the labor and material bond contains the following provision:

"No suit or action shall be commenced hereunder by any claimant....

(b) After the expiration of one (1) year following the date on which Principal ceased work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law."

■ Here, the language of the bond prohibits a shorter limitation of time than permitted by law, whereas in *General Electric,* the bond provision specifically stated that a shorter statutory limitation applied. Because we do not read §§ 38–26–105 and

38–26–106 as prohibiting a longer period of limitation in a labor and material bond, we hold that the one-year limitation contained in the bond applies here.

█ The project here was complete in November 1979 and Montezuma Plumbing & Heating did not make any claim on the bond until March 1981. Therefore, summary judgment was properly entered against Montezuma Plumbing & Heating on that issue.

Montezuma Plumbing & Heating further contends that it has a claim to the funds retained by the Housing Authority pursuant to § 38–26–107 on the theory of quantum meruit. We disagree.

█ In the absence of privity, subcontractors have no claim based on quantum meruit against a governmental body for retained funds when an appropriate bond has been furnished pursuant to statute. *Kennedy Electric Co. v. U. S. Postal Service,* 367 F.Supp. 828 (D.Colo.1973); *Kerite Co. v. City of Norwalk,* 32 Conn.Sup. 168, 344 A.2d 364 (1975); *see U. S. v. Munsey Trust Co.,* 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947).

### WEGHER AND DURANGO ORNAMENTAL IRON

Wegher and Durango Ornamental Iron claim that the date of their intervention in the trial court related back to the date of the actions filed by the other subcontractors and that they, therefore, are within the time limitations prescribed by §§ 38–26–105 and 38–26–106. They also claim the right to sue on the labor and materials bond and assert that the six-month limitations period of §§ 38–26–105 and 38–26–106 does not control because of the one-year limitations period in the labor and material bond.

█ In their complaints, neither Wegher nor Durango Ornamental Iron alleged an action against either the Housing Authority or Balboa on the basis of contracts existing between them, nor did they allege that Balboa was liable to them on the labor and material bond. Absent these allegations of privity, or of third-party beneficiary status, these subcontractors have stated no contract claim against the Housing Authority

or Balboa. *See Kennedy Electric Co. v. U. S. Postal Service, supra; Undersea Engineering & Construction Co. v. International Telephone & Telegraph,* 429 F.2d 543 (9th Cir. 1970).

In view of our holding that Wegher and Durango Ornamental Iron failed to state a claim against either the Housing Authority or Balboa, we do not reach their other contentions of error.

### MOUNTAIN GRAVEL & CONSTRUCTION COMPANY

On May 23, 1980, Mountain Gravel & Construction Company filed suit against the Housing Authority and Balboa on the basis of the labor and material bond, and for the retainage held by the Housing Authority pursuant to § 38–26–107. The trial court entered summary judgment because Mountain Gravel did not file its action within the six-month period provided by §§ 38–26–105 and 38–26–106 and the ninety days provided by § 38–26–107.

█ As to the claim to the retainage, Mountain Gravel failed to commence an action within ninety days of the date of final settlement, December 20, 1979, as required by § 38–26–107. Thus, summary judgment was properly entered on that claim. *Continental Casualty Co. v. Rio Grande Fuel Co., supra.*

█ However, based on our holding above that a claim on the labor and material bond is governed by the one-year limitation contained in the bond, and not the six-month limitation of § 38–26–106, the trial court erred in entering judgment against it on the labor and material bond. Completion of the project was on November 20, 1979, and Mountain Gravel's complaint was filed on May 23, 1980, well within the one-year period.

The judgment of the trial court as to Mountain Gravel's claim against Balboa is reversed; the remainder of the judgment is affirmed, and the cause is remanded for further proceedings consistent with this opinion.

STERNBERG and KIRSHBAUM, JJ., concur.